## STATE OF CONNECTICUT *v.* TYLER JOHNHEATH GODE
### (AC 34338)

Lavine, Bear and Mihalakos, Js.

Argued May 21—officially released August 13, 2013

*Allison M. Near*, assigned counsel, for the appellant (defendant).

*Lisa Herskowitz*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Jason Germain*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEAR, J. The defendant, Tyler Johnheath Gode, appeals from judgments of conviction, rendered after a consolidated jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), unlawful restraint in the second degree in violation of General Statutes § 53a-96 (a), threatening in the second degree in violation of General Statutes § 53a-62 (a) (1), sexual assault in the fourth degree in violation of General Statutes § 53a-73 (a) (2), and disorderly conduct in violation of General Statutes § 53a-182 (a) (2). On

appeal, the defendant claims that the court improperly (1) refused to instruct the jury on his theory of the case, namely, that he reasonably believed the victim consented to sexual intercourse, and (2) refused to instruct the jury on inconstancy of accusation. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts, which are relevant to this appeal. The defendant and the victim attended high school together.[1] The two dated for a brief period, and they remained acquaintances. The defendant and the victim both enrolled in the Junior Reserve Officers' Training Corps (ROTC) Program during the 2008–2009 school year. On Friday, May 1, 2009, the victim was in the ROTC back room when the defendant approached her from behind and fondled her breasts. The victim told the defendant to stop, crossed her arms across her chest to prevent him from continuing to touch her, and exited the room. A third student, T.S., also a member of ROTC, heard the victim's protests and witnessed the incident. T.S. reported the incident to the ROTC supervisor the following Monday, May 4, 2009.

Later that day, the supervisor discussed the incident separately with the victim and the defendant. The defendant admitted to the supervisor that he had grabbed the victim's breasts the preceding Friday. The supervisor reported the incident to the school's director of security, who, in turn, reported the incident to the local police department's school resource officer. T.S. subsequently was asked to meet with a police officer of the local police department.

The police officer later spent several hours interviewing the victim. Initially, they discussed the May

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

1, 2009 incident. During that conversation, the victim revealed an earlier instance of sexual assault by the defendant, which had occurred on December 23, 2008. The police officer then interviewed the defendant about the May 1, 2009 incident, and the defendant admitted grabbing the victim's breasts on that day.

With respect to the December 23, 2008 incident, the victim testified that she had invited the defendant to her grandparents' home to help hang Christmas lights. The defendant walked to the home of the victim's grandparents, and the two hung Christmas lights until they ran out of clips. The victim and the defendant went inside, at which time she told her grandfather that they could not finish hanging the Christmas lights because they had run out of clips and needed to purchase more. The victim and the defendant went into a bedroom so that she could use the computer. The victim sat in front of the computer, and the defendant sat on the bed. Thirty minutes later, the victim finished using the computer and left the room to inquire whether her grandfather had returned with the clips. Her grandfather had not yet purchased the clips, but was about to do so. The victim went back to the bedroom and her grandparents went to purchase more clips, leaving her alone with the defendant. The defendant used the bathroom and returned to the bedroom. At this point, the victim and the defendant were sitting on the bed. The victim reached down to put on her shoe, but the defendant forcibly pulled her backward onto her bed. The victim sat up, and the defendant pushed her down a second time and laid on top of her. The victim felt the defendant's erection along her leg.

The defendant then unbuttoned and pulled down the victim's pants. The victim asked the defendant what he was doing, to which he replied, "Nothing, just don't worry about it." She replied, "I'm going to worry about it." She asked him a second time what he was doing;

in response, the defendant pushed her pants and underwear down with his leg and foot. The defendant placed his hand over her chest to keep her pinned down on the bed. He then used his right hand to direct his penis into her vagina. The victim told the defendant to stop and said, "You don't want to do this," but he continued to penetrate her and told her to shut up. The victim continued to resist, telling the defendant to "[g]et off me" and "[d]on't touch me." She moved back onto the bed to get away from the defendant until she reached the end of the bed and could not move any further. The defendant told her to stop moving and said "[j]ust deal with it, you know you're going to like it." The victim told the defendant to "leave me alone" but he continued to penetrate her approximately thirty more times. When she attempted to scream, the defendant placed his elbow on her chest and covered her mouth. The victim looked up at the defendant and told him that she would tell someone about what had transpired, to which he replied, "You're not going to tell anyone. And if you do, I'm going to kill you."

After ejaculating, the defendant cleaned himself and put his clothes back on. Thereafter, the victim went to the bathroom to clean herself. The victim and the defendant separately returned to the living room. By this time, the victim's grandfather had returned home with the clips. The victim and the defendant went outside to finish hanging the Christmas lights. When they were done, the victim's grandfather drove the defendant home; the victim went along with them and sat in the front seat.

Following an investigation by the local police department, the defendant was charged in two separate informations that were later consolidated for trial. The first information charged the defendant for crimes relating to the May 1, 2009 incident. The second information

charged the defendant for crimes relating to the December 23, 2008 incident. This appeal followed the judgments of conviction rendered after a jury trial.

Additional facts will be set forth as necessary.

I

The defendant first claims that the court "violated [his] constitutional right to have the jury instructed on his theory of defense."[2] He argues that the court improperly refused to instruct the jury in accordance with his request to charge, which set forth his theory of the case, namely, that he reasonably believed the victim engaged in conduct indicating that she consented to sexual intercourse. He also argues that it is reasonably possible that the jury was misled by the court's failure to give the proposed instruction. We are not persuaded.

We begin by setting forth our standard of review. "A challenge to the validity of jury instructions presents a question of law over which [we have] plenary review." (Internal quotation marks omitted.) *State* v. *Samms*, 139 Conn. App. 553, 558, 56 A.3d 755 (2012), cert. denied, 308 Conn. 902, 60 A.3d 287 (2013). "When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to

---

[2] In his brief and at oral argument, the defendant argued that failure to give an arguably warranted instruction pursuant to *State* v. *Smith*, 210 Conn. 132, 554 A.2d 713 (1989), constitutes an error of constitutional magnitude. We disagree. See *State* v. *Cotton*, 77 Conn. App. 749, 757–58, 825 A.2d 189, cert. denied, 265 Conn. 911, 831 A.2d 551 (2003), citing *State* v. *Jeffrey*, 220 Conn. 698, 718, 601 A.2d 993 (1991) ("[a]lthough *Smith* supports the notion that a defendant is entitled to request an instruction that the state must prove beyond a reasonable doubt that the conduct of the victim would not have justified a reasonable belief that she had consented, our Supreme Court has declined to hold that there is a constitutional requirement that the court must give such an instruction whenever consent is placed in issue in a sexual assault case"), cert. denied, 505 U.S. 1224, 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992).

be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Griffin*, 97 Conn. App. 169, 181, 903 A.2d 253, cert. denied, 280 Conn. 925, 908 A.2d 1088 (2006).

The following additional evidence, adduced at trial, is relevant to the defendant's claim. Contrary to the victim's testimony, the defendant testified that he and the victim were dating in December, 2008. He further testified that after they retired to the bedroom on December 23, 2008, they "made out," undressed each other and engaged in sexual intercourse. He denied ever threatening her or holding her down against her will. The defendant stated that he believed the sex was consensual because, during the intercourse, the victim was on top of him.

The defendant submitted to the court a written request to charge on sexual assault in the first degree that articulated his theory of the case, i.e., that he reasonably believed that the victim consented, by her conduct, to sexual intercourse. In addition to the model criminal jury instruction from the judicial branch website that the court intended to give to the jury; see Connecticut Criminal Jury Instructions (4th Ed. 2010) § 7.1-1, available at http://www.jud.ct.gov/JI/criminal/part7/7.1-1.htm (last visited July 18, 2013) (copy contained in the file of this case in the Appellate Court

clerk's office);[3] the defendant proposed adding to the instruction language first articulated by our Supreme Court in *State* v. *Smith*, 210 Conn. 132, 554 A.2d 713 (1989) (*Smith* instruction), to inform the jury on the issue of consent.[4] The court declined to give a *Smith* instruction, holding that the model instruction adequately encapsulated the relevant law. After the court charged the jury, the defendant took an exception to the charge on the element of compulsion and the definition of consent.

In *State* v. *Smith*, supra, 210 Conn. 141, our Supreme Court explained: "[O]nce the issue [of consent] is raised, [a defendant may] request a jury instruction that the state must prove beyond a reasonable doubt that the conduct of the complainant would not have justified a reasonable belief that she had consented." Thus, "a

---

[3] In its relevant part, the model instruction reads: " 'Compelled' has its ordinary meaning. It means that the complainant did not consent and that the defendant must have required the complainant to engage in sexual intercourse against (his/her) will. If you find that the complainant consented to the act of sexual intercourse, you cannot find that the act was compelled. Such consent must have been actual and not simply acquiescence brought about by force, by fear, or by shock. The act must have been truly voluntary. Consent may be express or you may find that it is implied from the circumstances that you find existed. Whether there was consent is a question of fact for you to determine. The defendant has no burden to prove consent. The state must prove compulsion." Connecticut Criminal Jury Instructions, supra, § 7.1-1.

[4] The defendant proposed charging the jury in relevant part as follows: "Whether the defendant forced or compelled the complainant within the meaning of the first degree sexual assault statute depends not upon the complainant's subjective state of mind about whether she had consented, but upon her objective manifestations of consent as reasonably construed by the defendant. Jurors should never convict a defendant who had in their view acted in reasonable reliance upon the words or conduct of the complainant that indicated consent at the time and place of the alleged sexual intercourse. Therefore, after a full and fair comparison of the evidence, you must decide whether the state has proven beyond a reasonable doubt that the conduct of the complainant would not have justified a reasonable belief that she had consented. In other words, if you find that the defendant reasonably believed from the words and conduct of the complainant that she was consenting, then you must find the defendant not guilty."

defendant is entitled to a jury instruction that [he] may not be convicted of [the] crime [charged] if the words or conduct of the complainant under all the circumstances would justify a reasonable belief that she had consented." Id.

A defendant is not entitled to a *Smith* instruction every time the issue of consent is raised at trial.[5] Rather, the instruction should be given only when it is requested and warranted. Our Supreme Court has indicated that a *Smith* instruction may be warranted when the "suggestion [has been] made to the jury that it should acquit the defendant because he reasonably interpreted ambiguous conduct by the complainant to indicate her consent." *State* v. *Jeffrey*, 220 Conn. 698, 719, 601 A.2d 993 (1991) (*Smith* instruction not warranted where defendant's theory of case was that complainant had fabricated story of being forced to engage in sexual activity), cert. denied, 505 U.S. 1224, 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992). The defendant's theory here is more analogous to the facts of *Jeffrey* than to the theoretical situation contemplated in *Smith*.[6]

Although the defendant requested that a *Smith* instruction be given to the jury, the court concluded that the instruction it had prepared adequately addressed the issue of consent and any issue raised by *Smith*. In any event, the proper question for our consideration is whether a *Smith* instruction was warranted in this case. We conclude that it was not.

[5] The defendant repeatedly refers to "consent" as a defense to the charge of sexual assault in the first degree. Consent is not an affirmative defense to this crime. *State* v. *Smith*, supra, 210 Conn. 140. Rather, if the jury finds that the victim consented, it "would implicitly negate a claim that the actor had compelled the complainant by force or threat to engage in sexual intercourse." Id.

[6] In fact, the defendant in *Smith* was not entitled to the *Smith* instruction because the court did not find that the victim's conduct was sufficiently ambiguous. *State* v. *Smith*, supra, 210 Conn. 142–43.

A *Smith* instruction is warranted when the evidence suggests an ambiguity in the victim's conduct and the way the defendant perceived such conduct. See *State v. Cotton*, 77 Conn. App. 749, 759, 825 A.2d 189 (consent charge properly is given where "evidentiary basis [exists upon] which the jury could have concluded that the defendant could have misapprehended the victim's attitude toward his advances"), cert. denied, 265 Conn. 911, 831 A.2d 251 (2003); see also *State v. Jeffrey*, supra, 220 Conn. 719 (*Smith* instruction is inappropriate where "the issue of the reasonableness of the defendant's belief regarding the complainant's consent was never made a theory of defense in [the] case").

We agree with the trial court that the present case does not involve ambiguous conduct by the victim. The defendant's idiosyncratic self-serving interpretation of the victim's conduct does not make that conduct ambiguous. We also note that the defendant did not argue to the court that the victim's conduct was ambiguous and that he should have been found not guilty because he reasonably misunderstood her actions as indicative of consent. Rather, he proffered to the jury a completely different version of the relevant events. As he states in his brief to this court, his version of what happened on December 23, 2008, is "distinctly different" from the victim's account. According to the defendant, the victim and the defendant engaged in consensual sexual intercourse. He argues that he believed the sex was consensual because, among other reasons, he alleges that the victim was on top of him during intercourse. The victim, however, testified that the defendant pinned her down on her bed and forcibly removed her clothing; that she resisted his advances and told him to stop several times, but despite that he proceeded to penetrate her vaginally.

These conflicting accounts do not create the type of ambiguity our cases say is a predicate for a *Smith*

instruction. See, e.g., *Griffin* v. *Commissioner of Correction*, 137 Conn. App. 382, 396, 47 A.3d 956 (*Smith* instruction not warranted where defendant claimed sexual activity was consensual, not that victim's consent was ambiguous), cert. denied, 307 Conn. 921, 54 A.3d 182 (2012). In the present case, as in *Griffin*, the jury was presented with two diametrically opposed versions of the events that occurred on December 23, 2008, and it believed the victim's testimony about the incident instead of the defendant's testimony. Neither account of the incident suggested any ambiguity with regard to the victim's consent. It is the province of the jury as fact finder to weigh conflicting evidence and to make credibility determinations. *State* v. *Gene C.*, 140 Conn. App. 241, 246–47, 57 A.3d 885, cert. denied, 308 Conn. 928, 64 A.3d 120 (2013). Because the ambiguity required for a *Smith* instruction was lacking from this case, we conclude that the court properly declined the defendant's request for a *Smith* instruction.[7]

## II

The defendant's second claim is that the court improperly denied his request to instruct the jury on inconstancy of accusation, to "highlight the inconsistencies in [the victim's] [trial] testimony." He argues that

[7] Relying on two out-of-state cases, *State* v. *Koperski*, 254 Neb. 624, 578 N.W.2d 837 (1998), and *Carter* v. *State*, 121 Nev. 759, 121 P.3d 592 (2005), the defendant urges us to convert the discretionary *Smith* instruction into a mandatory charge that must be given every time the issue of consent is raised in a sexual assault prosecution. Even if we were to agree with the defendant on the merits, which we do not, we are an intermediate appellate court whose function is to apply the law—not make new law. "[I]t is manifest to our hierarchical judicial system that [the Supreme Court] has the final say on matters of Connecticut law and that the Appellate Court and Superior Court are bound by [its] precedent." (Internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 137 Conn. App. 307, 324, 48 A.3d 694, cert. granted on other grounds, 307 Conn. 918, 54 A.3d 562 (2012). As discussed previously in this opinion, we decline the defendant's invitation to address this argument because our Supreme Court has settled this question in *Smith*.

the jury was misled by the court's refusal to give the requested instruction. We are not persuaded.

Our well established standard of review for considering a claim of erroneous jury instructions is stated in part I of this opinion.

The following additional facts are relevant to the defendant's second claim. The victim and another female, A.F., were close friends, who spoke on a daily basis. At the time of the December 23, 2008 incident, the defendant was dating A.F. A.F. testified that she and the defendant stopped dating shortly after the defendant told her he had sexual intercourse with the victim. In January or February, 2009, A.F. called the victim and asked her whether she had engaged in sexual intercourse with the defendant; the victim confirmed that she and the defendant had engaged in sexual intercourse.

According to the defendant, A.F.'s testimony implicitly contradicted the victim's testimony. At trial, the victim implied that the first time she discussed the sexual assault was in her conversation with the police officer on May 4, 2009. The following exchange occurred between the prosecutor and the victim:

"Q. Why did you want to come forward [to the police officer] at that time?

"A. I wanted to finally get it off my chest. It was—I don't want to say it was killing me, but it was bothering me a lot and I really just wanted to tell someone, I just didn't know who, and it was an opportunity, and I knew it was a safe opportunity."

The victim testified that she did not recall telling A.F. in January or February, 2009, that she had had sex with the defendant—though "I might possibly [have told her], but I really don't remember." But in subsequent cross-examination by defense counsel, the victim

testified that she did not tell A.F. that she had engaged in sexual intercourse with the defendant.

In his written request to charge, the defendant proposed a variation of the model constancy of accusation instruction. His proposed instruction would have highlighted alleged inconsistencies, instead of consistencies, in the victim's testimony, allegedly based on her conversations with A.F. and her alleged implication that the police officer was the first person with whom she discussed the December 23, 2008 incident.[8] At the charging conference, the defendant repeated his request that his proposed inconstancy of accusation instruction be included in the jury charge. The court declined to give the defendant's proposed instruction, concluding that it appeared to be a "180 degree reversal" from the standard constancy of accusation instruction. See Connecticut Criminal Jury Instructions (4th Ed. 2011) § 7.2-1, available at http://www.jud.ct.gov/JI/criminal/part7/7.2-1.htm (last visited July 18, 2013) (copy contained in the file of this case in the Appellate Court clerk's office). At the conclusion of the court's jury charge, the defendant again took exception to the court's charge.

Under the common-law constancy of accusation doctrine, "once the victim [of a sexual assault] has testified [about] the alleged sexual assault and the identity of the person or persons to whom a complaint had been made" the state is permitted to introduce details of the complaint and "constancy of accusation testimony of each of the persons to whom the complainant had reported the sexual assault." *State* v. *Troupe*, 237 Conn. 284, 297–98, 677 A.2d 917 (1996). In *Troupe,* our

---

[8] In relevant part, the defendant's proposed instruction read: "This evidence by [A.F.] is admitted solely to corroborate or not the testimony of the complaining witness in court, to be considered by you only in determining the weight and credibility you will accord the complaining witness's testimony given here in this court as to the alleged sexual assault in December 2008."

Supreme Court limited this rule so that constancy of accusation testimony could be introduced only "with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge . . . ." Id., 304. Thus, constancy of accusation information is permitted "solely to corroborate the victim's prior in-court testimony concerning the facts of the alleged sexual offense and to show constancy in the victim's declarations." (Internal quotation marks omitted.) Id., 290–91 n.7.

The constancy of accusation instruction is given to counteract lingering misconceptions that victims of sexual assault always come forward promptly to report their assault. Id., 300–302. But, as the state argues in its brief, there is no justification for expanding this doctrine to include prior inconsistent statements by the victims of sexual assault.

Our cases recognize three instances where a special instruction highlighting a witness' potentially specious credibility, by virtue of the witness' status, is given: (1) when the complaining witness could have been subject to prosecution himself, dependent upon his recollection of the criminal transaction about which he testifies; (2) when an accomplice testifies; and (3) when a jailhouse informant testifies. State v. Gonzalez, 137 Conn. App. 696, 701–702, 49 A.3d 1025, cert. denied, 307 Conn. 920, 54 A.3d 563 (2012).

The defendant relies on our Supreme Court's decision in State v. Ali, 233 Conn. 403, 423, 660 A.2d 337 (1995), to argue that it is reversible error where "the court fails to instruct the jury that it may rely on inconsistencies in a complainant's testimony to discredit her testimony in court." In Ali, the defendant had requested, as part of the court's constancy of accusation instruction, that

the jury be instructed to consider the testimony of constancy witnesses not only to corroborate the victim's testimony but also to impeach the victim's testimony if there were inconsistencies. Id., 417 n.10. The court refused, instead instructing the jury that constancy of accusation evidence was admitted for the sole purpose of corroborating the victim's testimony. Id., 424. Our Supreme Court found this to be reversible error because the trial court had failed to balance the jury instructions by not explaining to the jury that "it could use the inconsistencies elicited during the trial and highlighted during closing argument to impeach the victim's credibility." Id., 425. *Ali* is distinguishable from the present case in that the legitimate concerns raised in *Ali* do not apply here because the state did not introduce any constancy of accusation evidence, and thus there was nothing for the trial court to balance.

Furthermore, the court charged the jury on witness credibility by explaining that in weighing the evidence "you must take into account . . . [whether] the witness' testimony [was] contradicted by what that witness had said or done at another time, or by the testimony of other witnesses, or by other evidence." We conclude that the court's general charge on credibility sufficiently alerted the jury that it must consider inconsistencies in the victim's testimony in accessing her credibility and determining whose account of the events it believed. Additionally, we agree with the state that the defendant could have requested the standard prior inconsistent statement instruction; see Connecticut Criminal Jury Instructions (4th Ed. 2008) § 2.4-3, available at http://www.jud.ct.gov/JI/criminal/part2/2.4-3.htm (last visited July 18, 2013) (copy contained in the file of this case in the Appellate Court clerk's office); had he believed that the jury needed additional guidance on how it should treat inconsistent statements as evidence.

After our consideration of the foregoing, we conclude that the defendant was not entitled to have the jury charged on inconstancy of accusation as offered in his proposed instruction. We therefore reject the defendant's second claim.

The judgments are affirmed.

In this opinion the other judges concurred.