STATE OF CONNECTICUT *v.* RICHARD T. SMITH
(13446)

PETERS, C. J., HEALEY, SHEA, COVELLO and HULL, Js.

Argued November 4, 1988—decision released February 21, 1989

*Martin Zeldis,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*James M. Ralls,* deputy assistant state's attorney, with whom, on the brief, were *Susan Marks* and *Roland Fasano,* assistant state's attorneys, for the appellee (state).

SHEA, J. After a jury trial the defendant was convicted of sexual assault in the first degree in violation

of General Statutes § 53a-70. In this appeal he claims error in (1) the denial of his motion for a judgment of acquittal for insufficiency of the evidence on the element of lack of consent, (2) the application of a statute, § 53a-70, claimed to be unconstitutionally vague, to the facts of this case, (3) the instructions to the jury, as well as the argument of the prosecutor, concerning certain evidence of consciousness of guilt, and (4) the charge upon reasonable doubt. We find no error.

Upon the evidence presented the jury could reasonably have found the following facts. On March 18, 1987, the victim, T, a twenty-six year old woman, and her girlfriend, A, a visitor from Idaho, went to a bar in West Haven. T was introduced by a friend to the defendant, who bought her a drink. The defendant invited her and A, together with a male acquaintance A had met at the bar, to dinner at a restaurant across the street. After dinner, the defendant having paid for T's share, the four left the restaurant. The defendant proposed that they all go to his apartment in West Haven. Because A's acquaintance had a motorcycle, the defendant gave them directions to the apartment so that they could ride there, while he and T walked.

After a twenty minute walk, the defendant and T arrived at the apartment at about 10 p.m. A and her acquaintance were not there and never arrived at the apartment. When T and the defendant had entered the apartment they sat on the couch in the living room to watch television. After a while the defendant put his arm around T and told her he wanted a kiss. She gave him a kiss. She testified that "He wouldn't back off. He wouldn't let go of me. So I said, look, I am not kidding. I really don't want to do anything. I don't know you and whatnot." The defendant still held onto T. She testified that he was "still right in my face wanting to kiss me. You know, saying so, saying that you don't think I paid for dinner for nothing, do you."

T testified that she was scared: "At first I didn't know what to do. I did spit in his face and he didn't even take it seriously. Then I tried kicking him off, which was to no avail. He was way too big for me." T described the defendant as "at least six foot two" and "at least two hundred pounds." She testified: "He told me he could make it hard on me or I could make it easy on myself, which I finally decided was probably my best bet." T understood that the defendant was determined to "have sex" with her and that either he would hurt her or she "was going to go along with it." At the point where T ceased resistance, she was "down on the couch" and the defendant was "on top of" her.

T testified that she had informed the defendant that she had to pick up her daughter, had insulted him, and had told him that he was "a big man to have to force a woman." She testified, however, that after she decided to "give in," she tried to convince the defendant that she was not going to fight and "was going to go along with him and enjoy it."

The defendant removed T's clothing as she remained on the couch and led her into the bedroom. When she declined his request for oral sex, he did not insist upon it, but proceeded to engage in vaginal intercourse with her. After completion of the act, the defendant said that he knew the victim felt that she had been raped, but that she could not prove it and had really enjoyed herself.

After they both had dressed, the defendant requested T's telephone number, but she gave him a number she concocted as a pretense. He also offered her some sherbet, which she accepted and ate while she waited for a cab that the defendant had called. T, however, placed her pink cigarette lighter underneath the couch, so that she would be able to prove she had been in the apartment. When the cab arrived, she left the apartment.

She told the cab driver to take her to the police station because she had been raped. At the station she gave her account of the event to the police. The defendant was arrested. The police found T's lighter under the couch in his living room, where T had informed them it was located.

I

Although the defendant claims insufficiency of the evidence as the basis for his claim that he was entitled to an acquittal, he actually seeks to have this court impose a requirement of mens rea, or guilty intent, as an essential element of the crime of sexual assault in the first degree. In fact, he concedes in his reply brief that, if conviction for sexual assault in the first degree requires only a general intent, he cannot prevail on his claim that the evidence was insufficient to support his conviction. This court has held that our statute, § 53a-70, requires proof of only a general intent to perform the physical acts that constitute that crime. *State* v. *Carter,* 189 Conn. 611, 625, 458 A.2d 369 (1983). "No specific intent is made an element of the crime of first degree sexual assault . . . ." "It is well settled that first degree sexual assault is a general intent crime." *State* v. *Rothenberg,* 195 Conn. 253, 258 n.4, 487 A.2d 545 (1985); *State* v. *Johnson,* 185 Conn. 163, 176, 440 A.2d 858 (1981), aff'd, 460 U.S. 73, 103 S. Ct. 969, 74 L. Ed. 2d 823 (1983).

The defendant, nevertheless, urges that we adopt a construction of § 53a-70 making the mental state of the defendant the touchstone for the resolution of the issue of consent when presented in a prosecution for first degree sexual assault. He refers to this mental state as a mens rea, a guilty mind, and describes it as an awareness on the part of a man that he is forcing sex upon a woman against her will and that he intends to do so. In the context of the evidence in this case, the

defendant claims, though he did not testify at trial, that he honestly believed that at the time the sexual act occurred that T had consented to it. He bases this claim upon her testimony that, after their preliminary encounter on the couch, and his remark that he could "make it hard" for her or she could "make it easy" on herself, she ceased resisting his advances and decided to "go along with it." T also testified that, once she decided to "give in," she acted as if she were "going to go along with him and enjoy it."

The position advocated by the defendant that the requisite mens rea should be an element of the crime of sexual assault in the first degree is supported by a widely publicized decision of the British House of Lords in 1975, *Director of Public Prosecutions* v. *Morgan,* 1976 App. Cas. 182, 205, 2 W.L.R. 913, 2 All E. R. 347 (H.L. 1975). A majority of the court held that a defendant cannot properly be convicted of rape if he in fact believed that the woman had consented, even though the basis for his belief may not have been reasonable. Lord Hailsham expressed the view that, for the crime of rape at common law, "the prohibited act is and always has been intercourse without the consent of the victim and the mental element is and always has been the intention to commit that act, or the equivalent intention to have intercourse willy-nilly, not caring whether the victim consents or no." Id., 215. A similar position has been adopted in Alaska, where it is held that the state has the burden of proving at least "that the defendant acted 'recklessly' regarding his putative victim's lack of consent." *Reynolds* v. *State,* 664 P.2d 621, 625 (Alaska App. 1983). The Supreme Court of California has concluded that a wrongful intent is an element of a rape offense, but, contrary to *Morgan,* has held that this element would be negated if a defendant entertained a *"reasonable* and bona fide belief" that the complainant had consented. (Emphasis added.)

*People* v. *Mayberry,* 15 Cal. 3d 143, 145, 125 Cal. Rptr. 745, 542 P.2d 1337 (1975). A recent commentary on the subject of rape also has suggested that the focus of the inquiry regarding consent in such cases should be upon the mens rea of the defendant rather than upon the attitude of the victim. S. Estrich, "Rape," 95 Yale L.J. 1087, 1094–1132 (1986).

Most courts have rejected the proposition that a specific intention to have intercourse without the consent of the victim is an element of the crime of rape or sexual assault. See, e.g., *State* v. *Reed,* 479 A.2d 1291, 1296 (Me. 1984); *Commonwealth* v. *Grant,* 391 Mass. 645, 650, 464 N.E.2d 33 (1984); *Commonwealth* v. *Lefkowitz,* 20 Mass. App. 513, 521, 481 N.E.2d 227, review denied, 396 Mass. 1103, 485 N.E.2d 188 (1985); *Commonwealth* v. *Williams,* 294 Pa. Super. 93, 99–100, 439 A.2d 765 (1982); *State* v. *Houghton,* 272 N.W.2d 788, 791 (S.D. 1978). This court has implicitly discountenanced such a claim. *State* v. *Rothenberg,* supra; *State* v. *Carter,* supra. One of the complications that might arise, if such a mental element were required, involves the problem of intoxication, which is generally held to be relevant to negate a crime of specific intent but not a crime of general intent. *State* v. *Carter,* supra, 625; *State* v. *Bitting,* 162 Conn. 1, 7, 291 A.2d 240 (1971). The difficulty of convicting a thoroughly intoxicated person of rape, if awareness of lack of consent were an element of the crime, would diminish the protection that our statutes presently afford to potential victims from lustful drunkards. Another related problem would be the admissibility of evidence of other similar behavior of a defendant charged with rape to prove his intent to disregard any lack of consent. Such evidence is now usually excluded as more prejudicial than probative, because only a general intent is necessary to constitute the offense. See *State* v. *Houghton,* supra, 791.

Although the Supreme Judicial Court of Massachusetts has rejected the contention that a specific intent to have nonconsensual intercourse is an essential element of the crime of rape that the state must prove, it has expressly left open the question "[w]hether a reasonable good faith mistake of fact as to the fact of consent is a defense to the crime . . . ." *Commonwealth* v. *Grant*, 391 Mass. 645, 651, 464 N.E.2d 33 (1984); *Commonwealth* v. *Sherry*, 386 Mass. 682, 697, 437 N.E.2d 224 (1982). The California Supreme Court, in holding that a wrongful intent is an element of the crime of rape in *People* v. *Mayberry*, supra, construed the California penal code to embody the principle that a mistake of fact based upon a reasonable and good faith belief as to consent negates the existence of the requisite wrongful intent. A corresponding provision of our own penal code, General Statutes § 53a-6 (a),[1] allows the defense that a person has engaged in conduct otherwise criminal under a mistaken belief of fact where "[s]uch factual mistake negates the mental state required for the commission of an offense." This statute, however, applies only to specific intent crimes. Unless we should conclude, contrary to our precedent, that the mental state required of the actor for sexual assault in the first degree includes an awareness of lack of consent, even a reasonably founded, but nonetheless mistaken, belief as to that fact would not be available as a defense under § 53a-6 (a).

Our first degree sexual assault statute, § 53a-70, applies to a person who "compels another person to engage in sexual intercourse by the use of force . . .

---

[1] General Statutes § 53a-6 (a) provides: "A person shall not be relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief of fact, unless: (1) Such factual mistake negates the mental state required for the commission of an offense; or (2) the statute defining the offense or a statute related thereto expressly provides that such factual mistake constitutes a defense or exemption; or (3) such factual mistake is of a kind that supports a defense of justification."

or by the threat of use of force which . . . reasonably causes such person to fear physical injury . . . . " Although the consent of the complainant is not expressly made a defense to such a crime, it is abundantly clear that the draftsmen of our penal code endorsed the principle that "non-commercial sexual activity in private, whether heterosexual or homosexual, between consenting, competent adults, not involving corruption of the young by older persons, is no business of the criminal law." Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes (1969) p. 38. A finding that a complainant had consented would implicitly negate a claim that the actor had compelled the complainant by force or threat to engage in sexual intercourse. Consent is not made an affirmative defense under our sex offense statutes, so, as in the case of the defense of alibi, the burden is upon the state to prove lack of consent beyond a reasonable doubt whenever the issue is raised.

While the word "consent" is commonly regarded as referring to the state of mind of the complainant in a sexual assault case, it cannot be viewed as a wholly subjective concept. Although the actual state of mind of the actor in a criminal case may in many instances be the issue upon which culpability depends, a defendant is not chargeable with knowledge of the internal workings of the minds of others except to the extent that he should reasonably have gained such knowledge from his observations of their conduct. The law of contract has come to recognize that a true "meeting of the minds" is no longer essential to the formation of a contract and that rights and obligations may arise from acts of the parties, usually their words, upon which a reasonable person would rely. E. Farnsworth, Contracts § 3.6. Similarly, whether a complainant has consented to intercourse depends upon her manifestations of such consent as reasonably construed. If the conduct

of the complainant under all the circumstances should reasonably be viewed as indicating consent to the act of intercourse, a defendant should not be found guilty because of some undisclosed mental reservation on the part of the complainant. Reasonable conduct ought not to be deemed criminal.

It is likely that juries in considering the defense of consent in sexual assault cases, though visualizing the issue in terms of actual consent by the complainant, have reached their verdicts on the basis of inferences that a reasonable person would draw from the conduct of the complainant and the defendant under the surrounding circumstances. It is doubtful that jurors would ever convict a defendant who had in their view acted in reasonable reliance upon words or conduct of the complainant indicating consent, even though there had been some concealed reluctance on her part. If a defendant were concerned about such a possibility, however, he would be entitled, once the issue is raised, to request a jury instruction that the state must prove beyond a reasonable doubt that the conduct of the complainant would not have justified a reasonable belief that she had consented.

Thus we adhere to the view expressed in our earlier decisions that no specific intent, but only a general intent to perform the physical acts constituting the crime, is necessary for the crime of first degree sexual assault. We reject the position of the British courts, as well as that adopted in Alaska, that the state must prove either an actual awareness on the part of the defendant that the complainant had not consented or a reckless disregard of her nonconsenting status. We agree, however, with the California courts that a defendant is entitled to a jury instruction that a defendant may not be convicted of this crime if the words or conduct of the complainant under all the circumstances would justify a reasonable belief that she had consented.

We arrive at that result, however, not on the basis of our penal code provision relating to a mistake of fact, § 53a-6 (a), which is applicable only to specific intent crimes, but on the ground that whether a complainant should be found to have consented depends upon how her behavior would have been viewed by a reasonable person under the surrounding circumstances.

The defendant in this case made no request to charge upon the issue of the mental state required for the crime of sexual assault in the first degree or upon the issue of consent, nor did he except in these respects to the charge as given. On appeal his claim that a realization by a defendant of the absence of consent, or its recklessness equivalent, should be an element of the crime, as courts in Great Britain and Alaska have held, is necessarily limited to the sufficiency of the evidence to establish either an actual awareness[2] that T had not consented or a reckless disregard of her manifestations of nonconsent. Since we have rejected the subjective standard for determining the issue of consent, however, the question for us is whether the evidence is sufficient to prove that a reasonable person would not have believed that T's conduct under all the circumstances indicated her consent.

From our review of the evidence detailed previously, it is clear that the jury could properly have found beyond a reasonable doubt that T's words and actions could not reasonably be viewed to indicate her consent to intercourse with the defendant. According to her uncontradicted testimony, she expressly declined his advances, explaining that she did not know him and wanted to pick up her child. She spat in his face and

---

[2] The testimony of T that the defendant had told her, after completion of the sexual act, that "he knew that [T] felt [she] was raped but [she] couldn't prove it" is significant evidence that the defendant subjectively may have realized that T had not consented to intercourse. We hold, however, that actual awareness of lack of consent is not essential.

"tried kicking him off." She "gave in" only after the defendant declared that "he could make it hard" for her if she continued to resist. This statement she could reasonably have regarded as a threat of physical injury. General Statutes § 53a-70. Only by entertaining the fantasy that "no" meant "yes," and that a display of distaste meant affection, could the defendant have believed that T's behavior toward him indicated consent. Such a distorted view of her conduct would not have been reasonable. The evidence was more than sufficient to support the verdict.

## II

The defendant's second claim, that § 53a-70, our first degree sexual assault statute, is unconstitutionally vague, is closely related to the first. He contends that, unless the statute is construed to require proof of a guilty mind, "every act of sexual intercourse can be punishable as a class B felony regardless of the mind set of the accused, because all that would be required to establish guilt is the act of sexual intercourse coupled with the statement of the victim that she felt threatened." He suggests that the reasonableness of the complainant's fear of physical injury generated by the threat "could readily be established simply by the differences in size between the man and the woman or the strangeness to the victim of the place she had gone to."

The horrendous scenario postulated by the defendant that a sexual assault conviction may be based wholly upon a statement by the complainant of feeling threatened because of the greater size of the person accused, combined with the strangeness of the surroundings, is contrary to the conclusion we have reached in Part I. There we held that the crux of the inquiry on the issue of consent was not the subjective state of mind of the complainant but rather her manifestations of lack of consent by words or conduct as reasonably construed.

Further, since § 53a-70 requires that one compel another person to engage in sexual intercourse "by the use of force . . . or by the threat of use of force . . . which reasonably causes such person to fear physical injury," it is clear that a defendant must either use force or threaten its use by words or conduct that would reasonably generate fear of physical injury.

"[A] penal statute must be sufficiently definite to enable a person to know what conduct he must avoid." *State* v. *Pickering,* 180 Conn. 54, 59–60, 428 A.2d 322 (1980). When first amendment freedoms are not involved, a claim that a statute is void for vagueness is determined by its applicability to the particular facts presented. Id., 57. "Hence, that a statutory provision may be of questionable applicability in speculative situations is usually immaterial if the challenged provision applies to the conduct of the defendant in the case at issue." Id., 58. The hypothetical put forth by the defendant of the wholly passive sexual assault victim intimidated solely by the size of the accused and the unfamiliarity of her surroundings, rather than by the use of force or threats, is far removed from the facts that the jury could reasonably have found in support of the verdict in this case. We conclude that the defendant's claim that § 53a-70 is void for vagueness is without merit in the context of the circumstances of this case.

## III

The defendant claims next that the charge to the jury on consciousness of guilt, as well as the prosecutor's conduct during trial and remarks during closing argument, violated the defendant's constitutional right to remain silent. The background of this claim is that, after the defendant had been arrested and had received the standard *Miranda* warnings, he gave a written statement to the police in which he admitted that, after

meeting T and having dinner with her and another couple, T accompanied him to his apartment, where the other couple also had agreed to come, although they never arrived. At the apartment, he watched a movie and T had some ice cream. He called a cab for her and she left about midnight.

The statement did not mention any sexual activity between T and the defendant. At the trial, however, the police officer who had taken the statement testified that the defendant had denied "any sexual intercourse of any type" with T. During argument to the jury the state's attorney argued that the omission from the defendant's statement of any reference to having had sexual intercourse with T was an indication of his "consciousness of guilt," because innocent persons would have told the police the truth "when asked what the heck happened when they are accused of a crime." No objection to this argument was raised at trial, but the defendant's counsel responded that, even assuming that the defendant had actually denied having intercourse with T, as the officer had testified despite the omission of such a significant fact from the written statement, the defendant's failure to be completely candid with the police probably stemmed from his concern about his relationship with a woman with whom he had been living at the time, but who had been away from the apartment on the night T had been there.

The trial court charged the jury, in reference to the state's claim that the defendant had given a false statement to the police on whether sexual intercourse had occurred, that "from any statements made by the accused subsequent to the alleged criminal act, which are proved to you to be false, you may fairly infer guilty knowledge influenced by the criminal act itself." The defendant excepted "to giving the consciousness of guilt instruction" as "an inaccurate statement of law,"

but did not specify in what respect it was claimed to be incorrect, as Practice Book § 852 requires.

In claiming on appeal that the prosecutor and the court violated his right to remain silent, the defendant assumes that the only basis for the argument and instruction concerning the consciousness of guilt inference to be drawn from a false statement to the police in response to an accusation of crime was the omission from the written statement of any mention of sexual intercourse. On this foundation the defendant has constructed an elaborate argument that, because he had received *Miranda* warnings advising him of his right to remain silent and to stop answering questions at any time, any comment upon his failure to tell the police he had engaged in intercourse with T infringed upon his constitutional privilege against self-incrimination. He relies upon *Doyle* v. *Ohio*, 426 U.S. 610, 617–18, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), which held that the silence of an arrested person in the face of police interrogation following *Miranda* warnings is "insolubly ambiguous" and that "[i]n such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial."

Apart from such considerations as the absence of any objection to the prosecutor's argument or the general nature of the defendant's exception to the charge, which never even remotely raised the claim he now advances, the assumption on which the claim is predicated is incorrect. The testimony does not indicate that the defendant remained silent or that he failed to respond to any question asked. The officer who took the statement testified that the defendant, when asked what had happened that night, had given the account contained in the written statement and had "denied

any sexual intercourse of any type."[3] On appeal the defendant maintains that this testimony should be construed to mean simply that the officer had inferred such a denial from the defendant's failure to mention the subject of intercourse in his statement. At trial, however, his attorney appears to have understood the officer's testimony to refer to an express denial of such intercourse: "Now [the officer] says that [the defendant] in fact denied he had intercourse." The possible construction of the officer's testimony now proposed by the defendant is not a sufficient basis for further consideration of this claim of error, because any such factual ambiguity must be resolved in favor of upholding the judgment. There is an insufficient factual foundation for the claim that the defendant remained silent after receiving the *Miranda* warnings.

## IV

The defendant claims finally that the court's instructions in defining reasonable doubt were erroneous and misleading because of the inclusion of the following sentence: "What [the law] does require is that the guilt be established as charged beyond a reasonable doubt, which is one founded upon the evidence, *one which you as reasonable and prudent men and women would be*

---

[3] Officer John Lyke of the West Haven police department testified in part as follows:

"Q. Was [the typed statement] the extent of his response to the question, what happened that night?

"Police Officer Lyke: Yes, sir.

"Q. Did he deny the sexual assault?

"A. Yes, sir.

"Q. Did he indicate at any time that he had sexual intercourse with the victim?

"A. No, he didn't, sir.

"Q. *So he denied any sexual intercourse of any type?*

"A. *That's correct.*

"Q. And nowhere in State's Exhibit 'P,' that is the statement typed up to you, did he say he had sexual intercourse?

"A. That's correct." (Emphasis added.)

*willing to act upon in the more weighty and important matters relating to your own affairs.*"[4] (Emphasis added.) The defendant concedes that he never excepted to this portion of the charge, but seeks review of this claim pursuant to *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). This court has permitted *Evans* review of similar claims that certain language used in the charge in a criminal case had the effect of diluting the state's constitutional burden to prove a defendant guilty beyond a reasonable doubt. *State* v. *Whelan,* 200 Conn. 743, 755–56, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986); *State* v. *Williams,* 199 Conn. 30, 33, 505 A.2d 699 (1986); *State* v. *Amarillo,* 198 Conn. 285, 299 n.9, 503 A.2d 146 (1986). Accordingly, we review this claim to determine whether the defendant has been deprived of a fundamental constitutional right and a fair trial. *State* v. *Evans,* supra. Although we disapprove of the instruc-

---

[4] The portion of the charge defining reasonable doubt was as follows: "Now, a reasonable doubt means this. It is a doubt for which a reasonable man or woman can give a valid reason. The burden of proving his guilt beyond a reasonable doubt requires the state to produce sufficient evidence to create in your minds a strong and a binding conviction of the guilt of the defendant. In other words, it is the law that the evidence must be so sufficient that it would leave no room in your minds for any reasonable hypothesis of the innocence of the accused. A reasonable doubt is not a doubt raised by one who questions for the sake of raising a doubt. A reasonable doubt is not a surmise or speculation, conjecture or an imaginary doubt. A reasonable doubt is not a captious or frivolous doubt, nor is it a doubt which is raised by the ingenuity of Counsel or by a juror and unwarranted by the evidence. Nor is it a doubt prompted by sympathy for the defendant. A reasonable doubt is a real doubt, an honest doubt, a doubt which has its foundation in the evidence offered in the case or the lack of evidence. Absolute certainty in the affairs of life is almost never attainable, and the law does not require absolute certainty to authorize a conviction. What it does require is that the guilt be established as charged beyond a reasonable doubt, which is one founded upon the evidence, one which you as reasonable and prudent men and women would be willing to act upon in the more weighty and important matters relating to your own affairs. It is proof wholly consistent with the defendant's guilt, and inconsistent with any other rational conclusion."

tion, in considering the charge as a whole, we conclude that it does not rise to the level of a constitutional error.

In *Holland* v. *United States,* 348 U.S. 121, 140, 75 S. Ct. 127, 99 L. Ed. 150 (1954), the defendant on appeal made an attack not made in the trial court upon a jury instruction similar to that before us that defined reasonable doubt as "the kind of doubt . . . which you folks in the more serious and important affairs of your own lives might be willing to act upon." The United States Supreme Court declared that "this section of the charge should have been in terms of the kind of doubt that would make a person hesitate to act, see *Bishop* v. *United States,* 71 App. D.C. 132, 137–138, 107 F.2d 297 [D.C. Cir. 1939], rather than the kind on which he would be willing to act." Id. The court observed, however, that "the instruction as given was not of the type that could mislead a jury into finding no reasonable doubt when in fact there was some" and that "[a] definition of a doubt as something the jury would act upon would seem to create confusion rather than misapprehension." *Holland* v. *United States,* supra. The ultimate conclusion was that, "taken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury." Id.

The reference in *Holland* to *Bishop* v. *United States,* supra, was to a definition of reasonable doubt that included this statement: "It is not a vague, speculative, imaginary something, but just such a doubt as would cause reasonable men to hesitate to act upon it in matters of importance to themselves." *Bishop* v. *United States,* supra,. 138. Judge Friendly of the Second Circuit Court of Appeals, in reviewing an instruction defining reasonable doubt in terms of acting rather than hesitating to act, opined that "the 'hesitate' language makes the point considerably better and we wish trial judges would use it." *United States* v. *Nuccio,* 373 F.2d 168, 175 (2d Cir.), cert. denied, 387 U.S. 906, 87 S. Ct.

1688, 18 L. Ed. 2d 623 (1967). He found it, however, "impossible to believe, in the absence of any evidence such as a request for further instructions, that jurors would retain such a nuance in their minds and be significantly influenced by it." Id.

We agree with these authorities that it is incongruous to speak of being "willing to act upon" a doubt, as the instruction in this case suggested, and that it is more consistent with the concept of reasonable doubt to use the "causing one to hesitate" phrase. *Bishop* v. *United States,* supra. These cases hold, nevertheless, that such a difference in phraseology does not constitute reversible error, let alone constitutional error in an otherwise adequate charge upon reasonable doubt. The defendant has no other criticism of the trial court's charge on the subject of reasonable doubt, and from our review we find it sufficient as a whole to define the standard of proof necessary for conviction in a criminal case. Accordingly, although we disapprove of the instruction under attack, we conclude that its inclusion does not warrant setting aside the judgment of conviction.

There is no error.

In this opinion the other justices concurred.